**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

THOMAS EDWARD JONES,

      Plaintiff,

vs.                                CASE NO. 3:09-cv-431-J-25TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

**REPORT AND RECOMMENDATION**[1]

     This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claims for disability insurance benefits (DIB) and supplemental security income disability payments (SSI).  42 U.S.C. § 405(g).  Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #11, P's Brief).[2]  Defendant filed his brief in support of the decision to deny disability benefits (Doc. #12, D's Brief).  The Commissioner has filed the transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

     The parties did not consent to the exercise of jurisdiction by a magistrate judge and the case has been referred to the undersigned for a report and recommendation.  The

_____

     [1]Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 (b)(2); Local Rule 6.02(a), United States District Court for the Middle District of Florida.

     [2]Hereafter, the Court will identify Plaintiff's brief as "P's brief" and Defendant's brief as "D's brief".

Court has reviewed the record and has given it due consideration in its entirety, including the arguments presented by the parties in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its determinations.  Accordingly, the matter has been decided on the written record. For the reasons set out herein, the undersigned **recommends the Commissioner's decision be AFFIRMED.**

## PROCEDURAL HISTORY

In the instant action, Plaintiff protectively filed applications for DIB and SSI on or about August 1, 2005 (Tr. 13; *see also* Tr. 94-95).[3]  Plaintiff alleged a disability onset date of September 5, 2003 (Tr. 105), which was amended to May 30, 2004 at the hearing, after a finding that Plaintiff had earnings records for work following his initial alleged onset date (Tr. 83-84, 91, 92-93, 473-74).[4]  Plaintiff's applications were denied initially and upon reconsideration. Thereafter, Plaintiff requested an administrative hearing, which was held on November 26, 2007 in Daytona Beach, Florida before administrative law judge (ALJ) William H. Greer (Tr. 471-514).   Plaintiff appeared and testified at the hearing, as did vocational expert (VE) Jack W. Turner, Jr.  Plaintiff was represented during the underlying administrative proceedings by attorney William H. Seitz (Tr. 64-65, 471).  ALJ Greer issued a hearing decision denying Plaintiff's claims for DIB and SSI on April 25, 2008 (Tr. 10-39).

---

[3]The Court was unable to locate copies of either application in the record.  The Leads/Protective Filing Worksheet found at Tr. 94-95, indicates the protective filing dates.

[4]The record reflects Plaintiff has earnings of $5,708.55 in 2004 (Tr. 93).

Plaintiff filed a request for review of the decision by the Appeals Council (AC); however, the AC denied Plaintiff's request on March 25, 2009 (Tr. 4-6), making the hearing decision the final decision of the Commissioner.  Plaintiff's current counsel of record, Mr. Richard L. Culbertson, timely filed the instant action in federal court on May 13, 2009 (Doc. #1).

### SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION
### AND THE STANDARD OF REVIEW

A claimant may be entitled to disability benefits if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   20 C.F.R. § 404.1505.[5]   The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 404.1520.  The claimant bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.  *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986).

The ALJ found Plaintiff met the Social Security Act's insured status requirements through December 31, 2009 (Tr. 18; *see also* Tr. 92).   At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity

_____

[5]Unless otherwise specified, all references to 20 C.F.R. will be to the 2010 edition. As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

since the amended alleged onset date of May 30, 2004 (Tr. 18).  At step two, the ALJ found Plaintiff had severe impairments identified as "back disorder, chronic obstructive pulmonary disease (COPD), status post aortic valve replacement (AVR), learning disability, anxiety, and depression" (Tr. 18).  At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 27).

The ALJ assessed Plaintiff retained the residual functional capacity (RFC) to "sit 6 hours, 30 minutes at a time and . . . stand while working for 1-2 minutes to loosen up; stand/walk 2 hours, 15 minutes at a time; occasionally lift 10 pounds, frequently lift 5 pounds; occasionally bend, stoop, stairs, crouch or kneel; no crawling, activities at unprotected heights, activities near moving and hazardous machinery, concentrated pulmonary irritants such as dust, fumes, extremes in temperature, or humidity; and no work that involves sharp instruments"  (Tr. 29).  Furthermore, the ALJ limited Plaintiff to work involving simple math of only addition and subtraction, and reading and writing short, simple instructions (Tr. 29).

At step four, the ALJ determined Plaintiff could not return to his past relevant work (PRW) as a maintenance technician (i.e., a janitor), a cook or a kitchen helper (Tr. 35).  However, at step five, based in part on the VE's testimony, the ALJ determined that, "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform" (Tr. 36).  Thus, the ALJ found Plaintiff was not under a disability within the meaning of the Social Security Act at any time from Plaintiff's amended onset date of May 30, 2004 through the date of his decision (Tr. 38).

4

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of facts are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as more than a scintilla, but less than a preponderance.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  The evidence must do more than merely create a suspicion of the existence of a fact; it must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Id.*

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health and Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court has not re-weighed the evidence, but has determined whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the Plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th  Cir. 1983).

As in all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen v. Yuckert*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). The plaintiff must provide the relevant medical and other evidence that he or she believes will prove the existence of disabling physical or mental functional impairments. 20 C.F.R. § 404.704.

## BACKGROUND AND ANALYSIS

Plaintiff, who was born January 31, 1971 (Tr. 474), was thirty-six years old at the time of the administrative hearing. Plaintiff testified he graduated from high school at the age of twenty after participating in special education classes (Tr. 476). Plaintiff has previously worked as a dishwasher and maintenance man (Tr. 478-84). Plaintiff indicated on his Disability Report - Adult that his ability to work was limited due to his calcified aortic valve and emphysema (Tr. 113). Plaintiff testified that he also suffers from depression, back pain (from piriformis syndrome)[6] that causes numbness in his legs, and anxiety (Tr. 489-92).

Plaintiff raises three issues on appeal. First, Plaintiff claims that the ALJ erred by

---

[6]The piriformis syndrome is a condition in which the piriformis muscle irritates the sciatic nerve, causing pain in the buttocks and referring pain along the course of the sciatic nerve. This referred pain, called "sciatica", often goes down the back of the thigh and/or into the lower back. Patients generally complain of pain deep in the buttocks, which is made worse by sitting, climbing stairs, or performing squats. The Piriformis Syndrome *found at* http://www.rice.edu/~jenky/sports/piri.html (last visited 9/7/2010).

failing to apply the correct legal standards to the opinions of two treating physicians, Dr. David Henderson, M.D., and Dr. Alyn Benezette, D.O. (P's Brief at 2, 9-14).   Second, Plaintiff contends that the ALJ erred by failing to apply the correct legal standards to Plaintiff's pain testimony (P's Brief at 2, 14-20).   Specifically, Plaintiff argues the ALJ's reasons for discrediting Plaintiff's testimony were not explicit, adequate, or based on substantial evidence (P's Brief at 17).   Lastly, Plaintiff claims the ALJ erred by not including the finding of Plaintiff's moderate difficulties in concentration, persistence or pace in the hypothetical question posed to the VE (P's Brief at 2, 20-21).

Defendant responds that substantial evidence supports the ALJ's decision that Plaintiff was not disabled (D's Brief at 4).   Defendant asserts that the ALJ properly evaluated and weighed all medical evidence of record from Dr. Henderson and Dr. Benezette and provided a clear rationale for according them limited weight (D's Brief at 8-11).   Defendant also claims the ALJ properly evaluated Plaintiff's subjective complaints and Plaintiff failed to provide evidence supporting his allegations of disabling limitations (D's Brief at 4-8).   Regarding the third issue, Defendant responds that the VE's testimony clearly addressed each limitation the ALJ ultimately found (D's Brief at 12).

The Court will address the issues as raised.

### *The ALJ's Evaluation of Treating Physicians' Opinion Evidence*

Plaintiff's first asserted issue of error concerns whether the ALJ gave proper weight to the opinions of two of Plaintiff's treating physicians, Drs. Henderson and Benezette (P's Brief at 9-14).   Dr. David Henderson, M.D., a cardiologist, saw Plaintiff on six occasions between December 5, 2002, when Plaintiff was found to be asymptomatic without complaints (Tr. 274-75), and February 19, 2004, which was the final of five follow-up visits

7

after Plaintiff's heart surgery (*see* Tr. 261-75).[7]   On July 17, 2006, Dr. Henderson completed a residual functional capacity form and a cardiac residual functional capacity form, both of which embody the opinion evidence at contest here.   Dr. Alyn Benezette, D.O., a neurologist, saw Plaintiff on eight (8) occasions from August 10, 2006 through April 16, 2007 (Tr. 363-82).   Dr. Benezette treated Plaintiff for buttock and leg pain and discomfort during this period (Tr. 363-82).  On October 20, 2007, Dr. Benezette completed a residual functional capacity form on which he assessed Plaintiff's abilities to perform work related activities (Tr. 410-18).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580,583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  The ALJ may, however, discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d at 583.  Further, the Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is not bolstered by the evidence, is contrary to the evidence, *or* when the treating physician's opinion is inconsistent with his or her own

---

[7]The record also reflects one additional visit to Dr. Henderson on January 18, 2007, during which a echocardiogram was performed and the treatment notes reflect Plaintiff's status post valve replacement was stable (Tr. 358-61).

medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (emphasis added).  If an ALJ elects to *disregard* the medical opinion of a treating physician, then he or she must clearly articulate the reasons for so doing.  *Id.* (emphasis added).

In this case, the ALJ gave "limited weight" to the opinion evidence from Dr. David Henderson, M.D., Plaintiff's treating cardiologist from September 2003 through February 2004 (Tr. 232, 263-73).  The record indicates Dr. Henderson treated Plaintiff during five visits following Plaintiff's aortic valve replacement on September 9, 2003 (Tr. 272).  Dr. Henderson's follow-up notes reveal that although Plaintiff initially described feeling tired with a low endurance (Tr. 265-73), Plaintiff's visit on February 19, 2004 revealed that he was feeling well and he had no difficulties returning to work (Tr. 263).  Dr. Henderson's notes are replete with remarks that Plaintiff's condition was stable (Tr. 261-73), along with a number of notes that Plaintiff could return to work (Tr. 270-71, November 20, 2003, patient "cleared to return to work [in] mid December;" Tr. 265-66, December 16, 2003, patient "given clearance to return to work the next day for four hours per day for one week, then six hours per day, and then eight hours per day thereafter;" Tr. 264, January 22, 2004, patient "feels well" and "is back to work without any difficulty").  Nothing in the record indicates Plaintiff did not return to work on December 17, 2003, and the record does indicate Plaintiff was doing well by the date of his follow-up visit with Dr. Henderson on January 22, 2004.

On or about February 23, 2006, the Social Security Administration (SSA) contacted Dr. Henderson regarding Plaintiff's medical condition and medical records (Tr. 261).  Rather than answer the questions, Dr. Henderson responded to the inquiries by stating only that he had not seen Plaintiff since February 2004 (Tr. 261-62).  However, several months later,

on July 17, 2006, Dr. Henderson completed a Physical Residual Functional Capacity Assessment form and a Cardiac Residual Functional Capacity questionnaire (Tr. 304-11).

It is unclear to the Court whether Dr. Henderson had Plaintiff's medical records from other sources before him when he completed these forms.  Dr. Henderson marked "Yes" in response to the question, "Is a treating or examining source statement(s) regarding the claimant's physical capacities in file?" (Tr. 310).  However, Dr. Henderson does not refer to any particular medical evidence he may have reviewed in reaching the conclusions reported on the Physical RFC form.  Dr. Henderson checked off boxes on the Physical RFC form reflecting his opinion Plaintiff could stand and/or walk for less than two hours in an 8-hour workday (making a handwritten notation of 20 minutes) and could sit less than six hours in an 8-hour workday (making a handwritten notation of 15 minutes), with necessary hourly breaks (Tr. 305).  On the Physical RFC form, Dr. Henderson indicated the symptoms Plaintiff alleged were consistent with the total medical and non-medical evidence, and noted Plaintiff was "unable to work" (Tr. 309).   Curiously, on the Cardiac RFC form, in response to the question, "Are your patient's impairments (physical impairments plus any emotional impairments) *reasonably consistent* with the symptoms and functional limitations described in this evaluation?", Dr. Henderson marked "No" (Tr. 313) (emphasis in the original).   On the Cardiac RFC form, Dr. Henderson marked the box indicating in his opinion Plaintiff would be absent more than four days per month from work (Tr. 315).   On the Physical RFC form, Dr. Henderson checked the box stating this was a current evaluation (Tr. 304); however, on the Cardiac RFC form, Dr. Henderson noted the patient was "last [seen] 2/19/04" (Tr. 312).

The ALJ in this case did not reject or disregard Dr. Henderson's opinion of Plaintiff's

condition.  The ALJ did, however, give limited weight to Dr. Henderson's opinion to the extent it reflects Plaintiff is unable to work (Tr. 33).

In his decision to give limited weight to Dr. Henderson's opinion, the ALJ found the opinion to be conclusory since Dr. Henderson's treatment notes provided no findings to support the assessment (Tr. 33).  This finding is supported by substantial evidence.  Dr. Henderson's treatment notes of Plaintiff simply do not reflect any limitations that would preclude work activities (*see* Tr. 261-65; *see also* 358-61).  In fact, the ALJ determined Dr. Henderson had not treated the Plaintiff in more than two years and Dr. Henderson's records during that time failed to provide any clinical data or laboratory abnormalities to support Dr. Henderson's opinion that Plaintiff is unable to work (Tr. 33, 263).   In accordance with  *Phillips v. Barnhart*, good cause existed for the ALJ to afford limited weight to Dr. Henderson's opinion.

The ALJ also afforded limited weight to  the opinion evidence of Dr. Alyn L. Benezette, D. O., Plaintiff's treating neurologist from August 2006 through April 2007 (Tr. 363-95).  Dr. Benezette treated Plaintiff for pain radiating from his lower back into his right buttocks and right leg, with numbness and tingling in the left leg  (Tr. 363-95).   Dr. Benezette conducted a nerve conduction study and ordered two MRI's before referring Plaintiff to a chiropractor and physical therapist (Tr. 389-92).  The August 10, 2006 nerve conduction study report reflected "mild axonal sensorimotor polyneuropathy left [greater than] right lower extremities" (Tr. 389, 391).   The September 5, 2006 MRI of the buttocks was "unremarkable" with only normal findings noted (Tr. 392).  The August 22, 2006 MRI of the lumbar spine found mild disk bulging at L2-3 and moderate diffuse disk bulging at L4-5 with mild bilateral neural foraminal stenosis at L4-5, but no significant spinal stenosis (Tr.

11

394).   Dr. Benezette determined on December 19, 2006 that Plaintiff had reached

maximum medical improvement (MMI) from a neurologic standpoint and found Plaintiff was

capable of sedentary activities (Tr. 368-69).[8]

Similar to Dr. Henderson, the ALJ did not reject or disregard Dr. Benezette's

medical opinion of Plaintiff's condition.  Instead, the ALJ chose to give limited weight to Dr.

Benezette's opinion from the Physical RFC evaluation form he completed on October 20,

2007 (Tr. 411).[9]  Dr. Benezette's assessment revealed that Plaintiff could not stand or walk

for two hours per day or sit for a total of six hours per day (Tr. 412).

In deciding to give limited weight to Dr. Benezette's RFC opinion, the ALJ found Dr.

Benezette's previous determination from December 2006 that Plaintiff had reached his MMI

and was capable of sedentary activities was inconsistent with his findings in the later RFC

assessment (see Tr. 368-69, 411-18).  The ALJ further clarified the RFC assessment from

October 2007 was not supported by the balance of the evidence (Tr. 34).

---

[8]The Court has considered Plaintiff's argument distinguishing sedentary work, which the ALJ found Plaintiff capable of performing, from sedentary activities, to which Dr. Benezette found Plaintiff should be limited (see P's Brief at 11-12; compare Tr. 29, 34 with Tr. 369), and finds the argument unpersuasive.  The ALJ's statement, "Dr. Benezette found the claimant. . . was capable of sedentary work," is harmless error, at most (Tr. 33) (emphasis added).  Although the Court would not expect a treating neurologist to be overly familiar with the particular strength requirements of various categories of work as defined by the Social Security Administration, the whole of Dr. Benezette's statements in the plan he outlined for Plaintiff on December 19, 2006 points directly to work related activities.  Not only did Dr. Benezette remark he would "restrict this patient to sedentary activities," he also noted the Plaintiff "should be allowed" to frequently change positions (Tr. 369).  The phrase "should be allowed" is clearly directed not to the Plaintiff himself, but to someone, such as an employer, who would have some level of control over the Plaintiff's movements in the course of a day.

[9]The record indicates Dr. Benezette had not treated or examined Plaintiff in six months since April 16, 2007 (Tr. 363).

12

Plaintiff argues the ALJ erred and the balance of the evidence overwhelmingly supports Dr. Benezette's more restrictive October 2007 opinion (P's Brief at 10). Plaintiff points to numerous tests and diagnoses in the record to support this argument. However, Plaintiff fails to describe how these tests provide evidence that Plaintiff is unable to stand or walk for two hours per day or sit for six hours per day in support of Dr. Benezette's RFC assessment.[10] This Court's review is limited to determining whether there is substantial evidence for the ALJ's finding that the balance of the evidence does not support the level of exertional restriction Dr. Benezette found represented Plaintiff's physical abilities as of October 2007.

On the one hand, Dr. Benezette's treatment notes reflect Plaintiff complained on December 19, 2006, January 15, 2007, and April 16, 2007  that he had difficulty sitting, walking or standing for even short  periods of time (Tr. 363, 366, 368).  However, Dr. Benezette's treatment notes also reflect Plaintiff reported walking "almost 3 miles" in April 2007, and reflect Plaintiff's description of his pain ranged from 2 to 4 on a 10 point scale (Tr. 363,  365, 370, 372, 375, 377, 379, 381, 382, 385), with 10 being the worst possible pain.  Dr. Benezette found Plaintiff to be in mild to moderate discomfort, with a mildly antalgic gait, full strength testing in upper and lower extremities and full ranges of motion (Tr. 363-92).

This Court's independent review of the record finds ALJ Greer's discussion of the

_____

[10]Plaintiff points to Dr. Friedenberg's opinion that Plaintiff would have difficulty returning to work (P's Brief at 10-11), but a close review of the record reveals Dr. Friedenberg, a psychologist, stated Plaintiff had significant medical issues that would limit his return to his previous line of work (Tr. 336), which the ALJ found Plaintiff was unable to perform (Tr. 35). Further, Dr. Friedenberg stated Plaintiff may have trouble gaining other employment based on his *learning disorders*, not his physical impairments (Tr. 336).

13

objective medical evidence and the statements from other physicians accurately portrays the evidence of record (*see* Tr. 18-27).  In sum, the objective medical tests have mild to moderate abnormal results, which arguably support the ALJ's findings (*see* Tr. 389, nerve conduction study with mild axonal sensorimotor polyneuropathy; Tr. 191, 219, 247, 248, 249, 403, 423, 446, chest x-rays that are noted as satisfactory post-operatively, with varying notes suggesting evidence of COPD, that was reported as stable on December 30, 2006 (Tr. 403) and without changes on the next x-ray, which was dated November 2, 2007 (Tr. 423); Tr. 392, 394, MRIs of buttocks and lumbar spine with unremarkable and mild results; Tr. 359, post aortic valve replacement echocardiogram noted as "stable").   On November 7, 2005 (Tr. 253-60) and April 10, 2006 (Tr. 295-302), two physicians reviewed Plaintiff's medical records that were contained in his file with the Social Security Administration at those points in time.  Both reviewing physicians completed Physical RFC forms and found the evidence supported a determination that Plaintiff could return to some level of work.  On February 21, 2008, the examining consultant for the Office of Disability Determinations found Plaintiff was capable of sedentary and light physical activity, even with an "abnormal ECG" (Tr. 447-60).

Thus, on review of the record as a whole, the Court finds substantial evidence supports the ALJ's findings regarding Dr. Benezette's opinion evidence and there was good cause to give limited weight to such evidence.  While Drs. Henderson and Benezette both clearly had treating relationships with Plaintiff, the treatment records simply do not support the levels of limitations they later reported on the referenced forms.  The ALJ in this case properly determined to afford limited weight to the opinions of Drs. Henderson and Benezette.  *See Phillips v. Barnhart*, 357 F.3d at 1240-41.

14

### *The ALJ's Evaluation of Plaintiff's Credibility*

Plaintiff claims the ALJ did not apply the correct legal standards to Plaintiff's pain testimony (P's Brief at 14-20).   Defendant contests this claim (D's Brief at 4-8).   Upon review, the Court finds Plaintiff's argument on this issue is without merit.

The ALJ must consider all of a plaintiff's statements about his or her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.   20 C.F.R. § 404.1520.   In so doing, the ALJ must apply the Eleventh Circuit's pain standard, which requires: (1) evidence of an underlying medical condition and either, (2) objective medical evidence substantiating the severity of the pain asserted, or, (3) the objective medical condition is so severe that it can be reasonably expected to give rise to the pain asserted.  *Foote*, 67 F.3d at 1560.

Once both prongs of the pain standard are satisfied, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability."  *Foote*, 67 F.3d at 1561 (citing 20 C.F.R. § 404.1529).   Thus, at this stage the ALJ must consider a claimant's subjective testimony of pain.   *Id*. at 1560. Furthermore, "[o]bjective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques . . . must be considered in reaching a conclusion as to whether the individual is under a disability."   42 U.S.C. § 423(d) (5)(A). Moreover, pain testimony is credible when evidence indicates that the claimant's condition could reasonably be expected to cause pain; claimant consistently complained of pain; and

15

claimant's daily activities have been significantly affected by pain.  *Foote*, 67 F.3d at 1560 (citations omitted).  Thus, a determination as to pain can only be reached by looking at the entire record, including both objective and subjective evidence.

If an ALJ decides not to credit a claimant's subjective testimony of pain, he must articulate explicit and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Foote*, 67 F.3d at 1561-62 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988)).  The articulated reasons must be based on substantial evidence. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir.1991).  When making a credibility determination, the decision maker's opinion must indicate an appropriate consideration of the evidence.  *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (internal citation omitted).

A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Foote*, 67 F.3d at 1561-62; *see also* 42 U.S.C. § 405(g) (the findings of the Commissioner as to any fact are conclusive if supported by substantial evidence).  In *Allen v. Sullivan*, the court found that where the ALJ articulated three specific reasons for rejecting claimant's subjective complaints of pain, the claimant's testimony was sufficiently discredited.  *Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir.1989).  Importantly, the reasons provided by the ALJ in *Allen* included specific references to objective evidence, including medical evidence, which did not support the claimant's allegations.  *Id.*

Here, Plaintiff testified that he experiences daily back pain that causes numbness in his legs, and he has shortness of breath from COPD that may occur from "anything" he

does and may occur even from stress (Tr. 488-91).  Plaintiff stated he takes no medication for his breathing difficulties and asserted he can not use inhalers because of the blood thinner medication he does take (Tr. 488-89).  Plaintiff testified that he is only able to sit for around 15-20 minutes before he begins feeling pain and is unable to stand for any length of time before his leg goes numb (Tr. 491).  He also testified that he stays home most of the day and watches television, then picks his daughter up from school and reads or works puzzles with her (Tr. 495, 499).

Upon review, the Court finds the ALJ's decision shows thorough consideration of Plaintiff's testimony and of the overall evidence in the record (*see* Tr. 18-34).  In evaluating the credibility of Plaintiff's testimony, ALJ Greer noted, "[Plaintiff] has reported his pain averages only 3/10 . . .and [Plaintiff's back pain is] intermittent and remitting in nature" (Tr. 31; *see* Tr. 275; *also see,* discussion of Plaintiff's ratings of pain, *supra*).  However, as the decision clearly illustrates, the ALJ does not rely solely on this fact in assessing Plaintiff's credibility.  The finding concerning Plaintiff's reported pain severity is one of a number of factors the ALJ took into consideration when assessing Plaintiff's general credibility and Plaintiff's complaints of disabling pain (*see* Tr. 31).  Overall, the ALJ  found, "After considering the evidence of record, the undersigned finds that the [Plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment. . ." (Tr. 31).

In finding that Plaintiff's pain testimony was not entirely credible, the ALJ properly

noted Plaintiff's treatment was essentially routine and/or conservative in nature and Plaintiff's daily activities were not as limited as would be expected given Plaintiff's complaints of disabling symptoms and limitations (Tr. 31-32). Plaintiff testified that he takes his Coumadin (blood thinner) and Lexapro (anti-depressant) daily, but only takes his pain medication as needed, if he is "in real bad pain" (Tr. 494). Plaintiff takes no medication, oral or inhalation, for his breathing/pulmonary problems (Tr. 488). Although Dr. Benezette referred Plaintiff to a chiropractor and encouraged Plaintiff to undergo chiropractic evaluation and treatment in October 2006 (Tr. 376), it appears from the record Plaintiff went for the evaluation and possibly only one chiropractic treatment thereafter even though a full plan of chiropractic treatments was developed for him (Tr. 353-57). Plaintiff's activities of daily living include watching television, picking up his five year old daughter from school and providing after school care that includes reading and working puzzles with her (Tr. 475, 495, 499). On June 16, 2006, Plaintiff presented to the Emergency Room at Florida Hospital in Ormond Beach, with acute lower back pain exacerbated by moving a couch on June 15 (Tr. 342-50). In July of 2006, Plaintiff told Dr. Friedenberg, a licensed psychologist, that he also participates in light household chores, drives, walks in the mall, and gets in the swimming pool with his daughter (Tr. 134, 319). *See* 20 C.F.R. § 404.1529(c)(3) (pattern of daily living is an important indicator of the intensity and persistence of symptoms); *see also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (finding the ALJ may consider evidence regarding a claimant's daily activities during the fourth step of the sequential evaluation process).

Here, ALJ Greer as the finder of fact, properly found Plaintiff was not fully credible

after he had questioned Plaintiff face-to-face.  The ALJ correctly considered a number of relevant factors when faced with ascertaining the degree of Plaintiff's credibility regarding his statements of disabling pain and inability to work.  Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ recognized that he had to articulate a reasonable basis for his determination and did so.  *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th  Cir. 1989).  The Court's independent review of the record confirms substantial evidence supports the ALJ's findings regarding Plaintiff's credibility.

### *The Hypothetical Questions Posed at the Hearing*

Plaintiff argues the ALJ erred by posing incomplete hypothetical questions to the vocational expert.  Here, the ALJ found Plaintiff's severe impairments included a back disorder, chronic obstructive pulmonary disease, status post aortic valve replacement, learning disability, anxiety and depression (Tr. 18).  Plaintiff asserts the ALJ did not include adequate limitations based on Plaintiff's moderate difficulties with concentration, persistence or pace in the hypothetical questions described to the vocational expert (P's Brief 20-21).  Upon review of the transcript of the administrative hearing, the Court finds Plaintiff's argument is wholly without merit.

True, it is well established in the Eleventh Circuit that when a vocational expert is utilized at the fifth step in the sequential evaluation process, the hypothetical questions posed must include all impairments of the particular claimant/plaintiff.  *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985).  Therefore, the Court must determine whether the ALJ failed to include any limitations resulting from Plaintiff's severe impairments in the

hypotheticals, and if so, whether such failure constitutes grounds for reversal.

In this case, the ALJ first posed a hypothetical question to the VE and stated the

following:

> I want you to assume an individual 36 years old with the work background and education as testified to by the claimant.  I want to clarify though on the education, I want you to assume that the individual can do simple math, add and subtract, but no multiplication or division or anything, you know, higher than that.  I want you to assume also the individual can read or write short, simple instructions.  Nothing more complex.  I want you to assume the individual can sit up to six hours per day but no more than 30 minutes at a time.  That they would need to get up for one or two minutes to loosen up.  I want you to assume the individual can stand or walk up to two hours per day but no more than 15 minutes at a time, lift up to ten pounds occasionally, five pounds frequently, occasional bending or stooping, no crawling, occasional stairs, occasional crouching, occasional kneeling, no work around unprotected heights, no work around moving or hazardous machinery, no concentrated or excessive exposure to pulmonary irritants such as dust, fumes or extremes in temperature or humidity.  And no work that might involve sharp instruments.  I'm basically referring to a risk of being cut as he's on a blood thinner.

(Tr. 500-01).

Based upon this hypothetical scenario, the VE identified jobs within the economy

that such an individual could perform (Tr. 502).  Specifically, he stated such a person could

perform the jobs of an addresser, a food and beverage order clerk, and a paramutual ticket

checker (Tr. 502).

When Plaintiff's counsel examined the VE he asked the VE to consider the additional

factors that Plaintiff "has depression, that he has difficulty concentrating or focusing on

things when he's taking his medication," to which the ALJ interjected that since they were

considering factors in the psychological area, the terms "moderate limitation in

concentration, persistence and pace" should be added (Tr. 507).  Plaintiff's counsel agreed

with the ALJ's statement of those terms and then asked the VE if such a person also had a GAF of 60, would not the full range of sedentary work that the hypothetical person could perform be significantly eroded (Tr. 507-08).[11]  The VE responded, "Not with a GAF of 60, no" (Tr. 508).  When the ALJ asked the VE whether an individual with a learning disability who had performed Plaintiff's past relevant work would have the mental capacity to perform the identified jobs of addresser, food and beverage order clerk, and paramutual ticket checker, the VE responded, "Yes" (Tr. 510).

Review of this evidence clearly demonstrates the hypothetical questions given to the VE included specific functional limitations arising out of Plaintiff's severe mental impairments, specifically regarding his moderate difficulties in concentration, persistence or pace.  *See Roberts v. Apfel*, 222 F.3d 466, 471 (8th Cir. 2000) (functional limitations of "no job requiring frequent, extensive or [constant] reading of written instructions" adequately addressed plaintiff's mental impairments of depression and diminished reading ability); *Maddox v. Apfel*, 202 F.3d 269 (Table Decision), 1999 WL 1281920 (6th Cir. Dec. 29, 1999) (affirming district court determination that a hypothetical person with the "residual functional capacity to perform simple, low-stress sedentary work that did not entail

---

[11]The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100.  A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning."  A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning.  A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships."  A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

interaction with the public" described adequate functional limitations for the plaintiff who had severe impairments of panic attacks and depression); *Jones v. Astrue*, 570 F.Supp.2d 708, 719 (E.D. Pa. 2007) (hypothetical posed to vocational expert that restricted the plaintiff to "simple, repetitive tasks" incorporated the plaintiff's limitations from severe impairment of depression); *Stout v. Astrue*, No. 3:07-cv-987-J-TEM, 2009 WL 890388 (M.D. Fla. Mar. 31, 2009) (ALJ's hypothetical for plaintiff to avoid work with unusual stress adequately addressed the plaintiff's severe affective disorder that caused mild to moderate difficulties in concentration, persistence or pace); *Kramer v. Soc. Sec. Admin.*, No. 08-15198-DT, 2010 WL 451055 (E.D. Mich. Jan. 28, 2010) (substantial evidence supported the ALJ's determination that no functional limitations arose out of the plaintiff's severe impairment of attention deficit disorder); *Comins v. Astrue*, No. 5:05-CV-556 (FJS/GHL), 2009 WL 819379 (N.D.N.Y. Mar. 26, 2009) (hypothetical restriction to simple, routine work in a structured environment without significant public contact adequately encompassed the plaintiff's severe depressive and anxiety disorders).[12]  *But see Richter v. Comm'r of Social Security*, No. 09-12674, 2010 WL 2017650 (11th Cir. May 21, 2010) (it was error for the ALJ not to include *any limitation* regarding the plaintiff's moderate deficiencies in maintaining concentration, persistence or pace in the hypothetical questions posed to the vocational expert) (emphasis added).  To the extent Plaintiff asserts the ALJ failed to incorporate appropriate mental limitations in the hypothetical questions asked of the vocational expert,

---

[12]Unpublished opinions may be cited throughout this order as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 32.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

the Court finds Plaintiff's argument fails.  In what appears to have been a joint effort to question the vocational expert on Plaintiff's moderate limitations in concentration, persistence and pace, the ALJ and Plaintiff's counsel adequately covered this issue with the VE, who, in turn, found such restriction did not entirely erode the sedentary work base.

Accordingly, the Court finds the hypothetical questions set forth for the VE's consideration included adequate limitations to account for all of Plaintiff's severe impairments.

## CONCLUSION

For the reasons stated herein, the undersigned **recommends the Commissioner's decision be AFFIRMED**.  The undersigned further recommends each party bear its own fees and costs and the Clerk of the Court be directed to enter judgment consistent with this Report and Recommendation.

**DONE AND ENTERED** at Jacksonville, Florida this 9th day of September, 2010.

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:
All counsel of record

23